# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BANKRUPTCY ESTATE OF RONALD D. LEE and SUSAN ANN LEE, ) ) ) Plaintiff, ) ) v. ) BURLINGTON NORTHERN SANTA FE ) RAILROAD COMPANY, et al., ) ) Defendants. ) _____ ) BNSF RAILWAY COMPANY, BURLINGTON ) NORTHERN SANTA FE CORPORATION, and ) BNSF LOGISTICS, LLC, ) ) Third-Party Plaintiffs, ) ) v. ) ) QUALITY TERMINAL SERVICES, LLC, ) ) Third-Party Defendant. ) | No. 07 C 5829<br><br>Judge John W. Darrah<br>Magistrate Judge Nan R. Nolan |

## MEMORANDUM OPINION AND ORDER

This diversity lawsuit arises out of injuries Ronald D. Lee allegedly sustained at BNSF Railway Company's ("BNSF") intermodal yard on September 10, 2005, when a 44,000 pound container crushed the small finger of his left hand. Lee, now replaced as real party in interest by the Bankruptcy Estate of Ronald D. Lee and Susan Ann Lee ("Plaintiff"), sued BNSF and related BNSF entities for negligence. BNSF, in turn, filed third-party complaints against Roadlink USA and Quality Terminal Services, LLC ("QTS"), seeking indemnification and contribution. Plaintiff attempted to add QTS as a respondent in discovery, but the district court denied that effort.

Discovery closed on February 2, 2010, and the parties are now preparing for trial. Currently before the court is QTS's motion for protective order preventing Plaintiff from calling Dr. Charles Carroll as a witness in the case. For the reasons stated below, the motion is granted.

## **BACKGROUND**

Following his September 10, 2005 injury, Plaintiff started treating with his primary hand-care physician, Dr. Jeffrey Greenberg. Plaintiff disclosed Dr. Greenberg as an expert pursuant to Federal Rule of Civil Procedure ("Rule") 26(a)(2), and Dr. Greenberg submitted a report stating, among other things, that:

1. Plaintiff sustained a high-energy crush injury to his small finger with resultant comminuted fractures, malunion, and intraarticular damage;

2. The treatment he provided was directly related to the crush injury;

3. The fees for Plaintiff's treatment were reasonable and customary; and

4. Plaintiff has two options for future medical care: fusion of the digit or a finger ray resection.

(Ex. A to QTS Motion, at 1, 5-6.) None of the other parties has disclosed any experts in this case.

At the request of QTS, the court ordered Plaintiff to submit to an examination by Dr. Charles Carroll pursuant to Rule 35. (Minute Order of 5/21/09, Doc. 87.) *See also* FED. R. CIV. P. 35(a) (the court "may order a party whose . . . physical condition . . . is in controversy to submit to a physical . . . examination by a suitably licensed or certified examiner.") Dr. Carroll examined Plaintiff on July 6, 2009, and prepared a report, "for advisory purposes only," stating:

1. Plaintiff sustained a crush injury to his small finger with a metacarpal head fracture and proximal phalanx fracture;

2. The treatment provided by Dr. Greenberg was timely, reasonable and necessary;

3. Plaintiff's crush injury relates to the industrial injury he sustained on September 10, 2005; and

4. Plaintiff has two options for future medical care: fusion or a finger ray resection.

(Ex. D to QTS Motion, at 1, 4-5.) Plaintiff obtained a copy of Dr. Carroll's report on September 11, 2009, and subsequently added him as a potential expert witness for trial. Plaintiff also served a supplemental request to produce seeking documents relating to Dr. Carroll's qualifications, prior

expert testimony, and compensation. (Exs. G, H to QTS Motion.) QTS objects that Plaintiff is not allowed to obtain information about its non-testifying, consulting expert, much less call him at trial, absent a showing of exceptional circumstances, which do not exist here. Plaintiff disagrees with this assessment, and QTS has moved for a protective order.

## **DISCUSSION**

Rule 26(b)(4) identifies two types of experts: testifying and consulting. An opposing party may "discover facts known or opinions held by" a consulting expert who is not expected to be called as a witness at trial "only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." FED. R. CIV. P. 26(b)(4)(B). *See also Sunrise Opportunities, Inc. v. Regier*, No. 05 C 2825, 2006 WL 581150, at *7 (N.D. Ill. Mar. 7, 2006). Rule 35 governs medical examinations where, as here, a party's physical condition is in controversy. Under Rule 35(b), "[t]he party who moved for the examination must, on request, deliver to the requester a copy of the examiner's report." FED. R. CIV. P. 35(b). Subdivision (b) "does not preclude . . . deposing an examiner under other rules," but does not itself provide for such oral discovery. FED. R. CIV. P. 35(b)(6).

It is undisputed that QTS never designated Dr. Carroll as a testifying expert in this case. QTS argues that as a consulting expert, Dr. Carroll can only be called to testify on behalf of Plaintiff upon a showing of exceptional circumstances, as provided in Rule 26(b)(4)(B). QTS also believes that by providing Plaintiff with Dr. Carroll's report, it has satisfied its discovery obligations under Rule 35. Plaintiff questions whether "exceptional circumstances" is the proper standard here, but insists that he can call Dr. Carroll as a witness and obtain information from him under any test.

3

### A. Testimony at Trial

Courts in this jurisdiction have not addressed whether a plaintiff may call a Rule 35 examiner as a witness at trial, particularly where he has never before been identified as a testifying expert. *See, e.g., Sunrise Opportunities*, 2006 WL 581150, at *7 (addressing whether Rule 26(b)(4)(B) "require[s] a party expert to be deposed if he originally is identified as a testifying expert, but later the party decides that the expert will not testify"). In *Lehan v. Ambassador Programs, Inc.*, 190 F.R.D. 670 (E.D. Wash. 2000), a Washington district court identified three approaches courts use in making this determination. Some courts have adopted an "entitlement" standard, finding that by submitting to a Rule 35 examination, a plaintiff is entitled to "call an opposing party's Rule 35 expert, despite the opposing party's desire not to have the expert testify." *Id.* at 671 (quoting *House v. Combined Ins. Co. of America*, 168 F.R.D. 236, 240 (N.D. Iowa 1996)). *See also Crowe v. Nivison*, 145 F.R.D. 657, 657-58 (D. Md. 1993) (allowing plaintiff to call examining physician at trial, explaining that "[i]n return for suffering an invasion of his person, the examined party is entitled to make use of such information as results from the examination.")

Other courts have relied on a "discretionary" or "balancing" standard, which "involv[es] a balancing of the interests of the party and the court against the potential for prejudice to the party who hired the expert, but who does not wish to use that expert at trial." *Id.* at 672 (quoting *House*, 168 F.R.D. at 240). A third group of courts utilizes the "exceptional circumstances" approach, which "recognize[s] interests weighing against allowing an opposing party to depose or to call at trial a consultative, non-testifying expert witness" absent exceptional circumstances. *Id.* (citing *Durflinger v. Artiles*, 727 F.2d 888 (10th Cir. 1984), *Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458 (S.D.N.Y. 1995), and *In re Shell Oil Refinery*, 132 F.R.D. 437 (E.D. La. 1990)).

QTS notes that most courts follow the exceptional circumstances approach and only allow a consulting expert to testify at trial where the moving party shows that "it cannot obtain the same information it seeks to discover by other means." *Cincinnati Ins. Cos. v. Hamilton Beach/Proctor-*

*Silex, Inc.*, No. 4:05-cv-49, 2007 WL 2609829, at *1 (N.D. Ind. Sept. 5, 2007). *See also Sunrise Opportunities*, 2006 WL 581150, at *8. The burden of proving exceptional circumstances is a heavy one, and QTS argues that Plaintiff cannot meet that burden here. *Id.* QTS stresses that Dr. Carroll's report essentially mirrors everything Dr. Greenberg stated, and notes that it cannot be impracticable for Plaintiff to obtain facts and opinions he already has. (QTS Motion, at 7.)

Plaintiff disputes the applicability of the exceptional circumstances approach, but insists that under any standard, he should be allowed to call Dr. Carroll as a witness at trial. As a preliminary matter, the court does not believe that the "entitlement" standard is consistent with Rule 35. As the *House* court noted, though Rule 35 "undeniably provides for invasion of the privacy of the examined party, and . . . waiver of the examined party's privilege," it "just as undeniably *does not* provide for deposition or use at trial of the examining expert by either party." 168 F.R.D. at 246 (emphasis in original). The *Lehan* court similarly observed that, as confirmed by Rule 26(b)(2)(B), Rule 35 guarantees only the right to obtain a report from the medical examiner. 190 F.R.D. at 672. *See also Carroll v. Praxair, Inc.*, No. 05-307, 2007 WL 437697, at *2 (W.D. La. Feb. 7, 2007) (Rule 35 "could have stated that the party is also entitled to depose the examiner, but it does not"; thus, "the limitations of other rules will control the taking of depositions of examination-conducting expert witnesses.") The court finds the rationale of these cases persuasive, and declines to hold that Plaintiff is entitled to call Dr. Carroll at trial merely because he had a Rule 35 examination.

The court need not decide which of the two remaining approaches applies here because Plaintiff's ability to call Dr. Carroll at trial is the same under both theories. Under the "discretionary" or "balancing" standard, the court must consider Plaintiff's interest in presenting to the jury the results of Dr. Carroll's examination, as well as "the peculiar prejudice that could arise if the jury is informed that an expert presented by one party was hired, then dropped, by the other party." *House*, 168 F.R.D. at 246. Under the "exceptional circumstances" standard, Plaintiff must

demonstrate that it is impracticable for him to obtain facts or opinions on the same subject by other means.  FED. R. CIV. P. 26(b)(4)(B).

Plaintiff claims that he needs to call Dr. Carroll (1) "as a rebuttal witness in the event that Defendants attempt to refute the testimony of [Dr. Greenberg]"; and (2) to offer a "second opinion" regarding "the most beneficial surgical procedure to maximize future use of his left hand." (Pl. Resp., at 5.)  The court agrees, in theory, that if one of the defendants attempted to discredit Dr. Greenberg's findings, then it might be appropriate to allow Plaintiff to call Dr. Carroll as a rebuttal witness.  Here, however, none of the defendants or third-party defendants has identified any expert witnesses, much less ones who may challenge Dr. Greenberg's assessment.  Moreover, to the extent Dr. Carroll agrees with Dr. Greenberg's opinion, his testimony would not constitute rebuttal testimony.

As for calling Dr. Carroll to offer a second opinion, both he and Dr. Greenberg identified fusion and finger ray resection as Plaintiff's future medical options.  In light of these essentially identical opinions, Plaintiff cannot demonstrate any exceptional circumstances justifying Dr. Carroll's testimony.  In addition, the prejudice to QTS of placing its prior retention of Dr. Carroll in front of the jury outweighs any benefit to Plaintiff from supplementing Dr. Greenberg's opinion.  The court sees no basis for allowing Plaintiff to call Dr. Carroll at trial and the motion for protective order is granted.

### B.     Discovery Requests

Having concluded that Plaintiff cannot call Dr. Carroll to testify at trial, there is no basis for requiring answers to Plaintiff's related requests to produce.

## **CONCLUSION**

For the reasons stated above, Quality Terminal Services, LLC's Motion for Protective Order [Doc. 123] is granted.

Dated: March 5, 2010

ENTER:

_____
NAN R. NOLAN
United States Magistrate Judge